IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LARRY BROWN

    Petitioner,

v.

MICHAEL DITTMANN,
Warden, Columbia Correctional Institution,

    Respondent.

OPINION and ORDER

Case No. 17-cv-96-wmc

---

Petitioner Larry J. Brown filed this petition under 28 U.S.C. § 2254, challenging the fact that he has been unable to restore his "good time" credit. This matter is currently before the court for preliminary review under Rule 4 of the Rules Governing Section 2254 Cases. For the following reasons, however, this petition will be dismissed unless petitioner satisfies the court that his petition is not barred by his failure to exhaust his state court remedies.[1]

BACKGROUND

On November 11, 1983, Brown was sentenced in Milwaukee County Circuit Court to 80 years of imprisonment in Case No. 1983K5190. While Brown became *eligible* for parole on July 5, 1985, he has never been paroled.

---

[1] Since filing his petition, Brown submitted a motion requesting access to a pen. (Dkt. #5.) More recently, however, Brown has submitted other requests on typed paper. As it appears that Brown now has access to writing materials, this motion will be denied as moot.

1

On May 13, 2011, when Brown was incarcerated at Waupun Correctional Institution ("Waupun"), Warden William Pollard issued a memorandum that set forth the circumstances in which prisoners could restore good time. Prisoners were required to submit a letter and money disbursement request to the records department for copies of: (1) their disciplinary record, DOC 173; and (2) their conduct reports, to allow review of both. However, Pollard also noted that offenses committed before January 2001 would not be considered. While Pollard further wrote that legal loans could not be used for the copy fee, he also stated that the fee could be waived under limited circumstances. Because Brown could not afford the copy fees, he wrote to Pollard to request a waiver of the fee on multiple occasions between 2011 and 2012, but Pollard denied each of Brown's waiver requests. (Dkt. #1-1, at 4-6.)

On November 7, 2012, Brown filed an inmate complaint, WCI-2012-23663, challenging his inability to restore his good time and in particular complaining that Pollard discriminated against him during his conduct report hearing process. Brown also argued that indigent prisoners had a right to try to restore their good time credit, and that by requiring prisoners to pay for copies of the materials necessary to petition to restore that credit, his equal protection and due process rights were being violated. On November 15, 2012, an inmate complaint examiner ("ICE") rejected WCI-2012-23663. Brown appealed the rejection, and on November 27, 2012, Pollard affirmed it.

On November 13, 2014, Brown was transferred from Waupun to the Wisconsin Secure Program Facility ("WSPF"). At WSPF, Brown requested his disciplinary records and a calculation of how much good time he had lost. On April 21, 2015, WSPF's records

2

department supervisor Diane Anderson provided Brown with a response, in which she provided some of his requested records. Anderson also calculated that he had lost one year and 17 days of good time. Before WSPF's warden could restore his good time, however, Brown was transferred from WSPF to Columbia Correctional Institution ("Columbia").

In May and June of 2015, Brown again tried to restore his good time credit, submitting multiple requests to have the copy fees waived. However, the waiver requests he submitted at Columbia were also denied. Brown does not claim that he has appealed any of the decisions related to his attempts at restoring his good time credit through the Wisconsin court system, and the court has been unable to locate any such proceedings in the Wisconsin state court system.


OPINION

Brown filed his petition for a writ of habeas corpus in this court on February 6, 2017, challenging his inability to restore his good time credits. Disciplinary hearings that deprive an inmate of good-time credit -- and, as a result, increase the inmate's period of incarceration -- may serve as a basis for requesting habeas relief. *See Waletzki v. Keohane*, 13 F.3d 1079, 1080 (7th Cir. 1994). However, the court cannot reach the merits of Brown's claim because his petition is subject to dismissal for his apparent failure to exhaust his state court remedies.

Federal courts may not review a habeas petition unless the prisoner has fairly presented his claims "throughout at least one complete round of state-court review, whether on direct appeal of his conviction or in post-conviction proceedings." *Richardson*

3

*v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014); 28 U.S.C. § 2254(b)(1). This exhaustion requirement has two components: (1) the petitioner's claims must be exhausted, meaning that there is no remaining state court with jurisdiction to hear the claims; and (2) exhaustion must *not* be attributable to the petitioner's failure to comply with the state court system's procedural rules. *Johnson v. Foster*, 786 F.3d 501, 504 (7th Cir. 2015); *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004).

With respect to good time credits specifically, "Wisconsin inmates have a judicial remedy - a petition for a common law writ of certiorari to the Wisconsin state courts." *McAtee v. Cowan*, 250 F.3d 506, 508 (7th Cir. 2001) (citing *Walker v. O'Brien*, 216 F.3d 626, 637 (7th Cir. 2000)). Thus, in Wisconsin, to challenge good time decisions made by the Department of Corrections ("DOC"), prisoners must go through the DOC's administrative procedures, and then through a state trial court by means of a writ of certiorari, followed by the Wisconsin Court of Appeals and petition to the Wisconsin Supreme Court. *See Roberts v. Jenkins*, 329 F. App'x 670, 671 (7th Cir. 2009).

When a petitioner has procedurally defaulted his claims by failing to exhaust, federal habeas review is available only if he can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law," or that "failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "Cause" for the default means "that some objective factor" prevented compliance with the state's procedural rules. *Id.* at 753. "Prejudice" means that the alleged violations "worked to [the petitioner's] *actual* and substantial disadvantage," which infected his entire proceeding with "error of constitutional dimensions." *Perruquet v.*

4

*Briley*, 390 F.3d 505, 515 (7th Cir. 2004) (original emphasis). A fundamental miscarriage of justice occurs when the petitioner presents evidence showing that he is "actually innocent" of the charges against him or the punishment imposed. *See, e.g., Dretke v. Haley*, 541 U.S. 386, 393 (2004).

If Brown has failed to exhaust *and* is unable to show both prejudice and good cause for the failure, then his claim is procedurally defaulted and must be dismissed. However, because procedural default is an affirmative defense, Brown was not required to show cause and prejudice or actual innocence in his original petition. *Perruquet*, 390 F.3d at 515. Nevertheless, a court may raise an affirmative defense before requiring the state to answer, if "it is so plain from the language of the complaint and other documents in the court's files that it renders the suit frivolous." *Gleash v. Yuswak*, 308 F.3d 758, 760-61 (7th Cir. 2002) ("Under the circumstances there was no point to serving the defendants with process, forcing them to engage counsel, and then waiting for the inevitable motion to dismiss."). In this instance, a motion to dismiss the petition as procedurally barred would be inevitable.

Therefore, Brown will be allowed an opportunity to overcome the procedural default with respect to his claim by showing: (1) what cause he may have for his failure to properly present his claim to the Wisconsin courts; and (2) what prejudice he suffered; *or* whether a failure to review his claims will constitute a fundamental miscarriage of justice because he is actually innocent. Because any response will be considered as a "supplement" to his petition for a writ of habeas corpus, Brown must make sure to declare that any statements contained in his response are made under penalty of perjury. 28 U.S.C. § 2242 (petition

5

must be "signed and verified" by petitioner). Brown may have 30 days to file the supplement. If he files the supplement, the court will determine whether he may proceed with his claim.

## ORDER

IT IS ORDERED that:

1. Petitioner Larry Brown's motion for access to a pen (dkt. #5) is DENIED as moot.

2. Petitioner has thirty (30) days to show cause explaining why this petition should not be dismissed as barred by the doctrine of procedural default by showing:

    (a) what cause he may have for his failure to properly present his defaulted claim in state court, and what prejudice he suffered; or

    (b) whether a failure to review his claims will constitute a fundamental miscarriage of justice because he is actually innocent.

3. Petitioner should label his document a "supplement to his petition for a writ of habeas corpus under § 2254" and make sure to declare that any statements he makes in the supplement are made under penalty of perjury. 28 U.S.C. § 2242 (petition must be "signed and verified" by petitioner).

4. No further action will be taken in this case until petitioner files a response to this order. **If petitioner fails to show cause, the court will dismiss his claim as barred by the doctrine of procedural default.**

Entered this 6th day of April, 2018.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge